Frank T. Morell (SBN 80436)
Attorney at Law
659 Third Avenue, Suite C
Chula Vista, CA 91910
(619)498-0667

Attorney for Defendant
Luis Adolfo Martinez-Valladores

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 20-0763-004-CAB |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| LUIS ADOLFO MARTINEZ-VALLADORES, | Date: 03/30/2022<br>Time: 09:30 a.m. |
| Defendant. | Honorable: Cathy Ann Bencivengo |

Comes now Defendant, Luis Adolfo Martinez-Valladores, (hereinafter Mr. Martinez), by and through his attorney, Frank T. Morell, and submits the following sentencing memorandum for consideration by the Court at time of sentencing.

I
INTRODUCTION

Mr. Martinez is a 47 year old, native and citizen of Nicaragua, with legal residence in Costa Rica. For the past few years Mr. Martinez had been in a relationship with Dora Maria Ovando, and the parties are very busy taking care of Ms. Ovando's grand-children. Prior to his arrest, Mr. Martinez and his family had been living in San Jose, Costa Rica.

On or about February 7, 2020, Mr. Martinez was approached by an individual by the name of Elias, who asked him if he wanted to earn $8,000.00, to essentially go

find a couple of fisherman lost at sea who carried illegal drugs in their boat. Their boat had sank someplace in the high seas. Elias was an individual who Mr. Martinez met while fishing recreationally with his family off the coast of Golfito, Costa Rica. In any event, the Defendant accepted this job which he understood entailed loading and offloading a vessel with the drugs.

On that same day Mr. Martinez, and Elias, set off from Golfito on a panga (a fast boat). The Defendant recalls that Mr. Elias had with him a radio with which he was able to speak to other individuals. When they got to the coordinates that Elias had they encountered another boat, color blue with a canopy, which had arrived there earlier, along with two other individuals. Another two men were in the water surrounded by about seventeen packages which presumably contained drugs, floating on the water.

Mr. Martinez at this point was told by Elias to go on to the blue boat and help load the packages of drugs. Shortly thereafter, Elias, and one of the smugglers that had been in the water, returned in Elias' boat presumably to Golfito, Costa Rica, they were stopped by the Coast Guard but were released. Subsequent to that a helicopter, presumably from the United States Coast Guard vessel, attempted to stop the blue panga and the individuals in the panga were told to throw the drugs overboard. It was at this point that the blue panga driven by somebody else begin to leave the area at high velocity in an attempt to flee. After several warnings the armed helicopter disabled the outboard motors by machine gunning them.

It was after that, that the occupants on the blue panga were boarded and arrested by United States Coast Guard personnel.

The Defendant's role in this case was simply that of a loader, and in this case, also unloader, he was not in the position of authority and in this whole scheme his actions were minimal and had received no compensation for this whole scheme.

## II

## OFFENSE CONDUCT

It is noted throughout the Presentence Report that this is Mr. Martinez' first contact with anything having to do with illicit substances, he has never experimented with drugs or abused alcohol.

Mr. Martinez entered a plea of guilty to count two, Possession of Cocaine, in violation of 46 U.S.C. §§ 70503 and 18 U.S.C. §2.

The Plea Agreement, in relevant part, also provides:

1. Base Offense Level [USSG §2D1.1]         32
2. Safety Valve (if applicable)             - 2
3. Acceptance of Responsibility             - 3
4. Departure for Fast Track                 - 4

Defendant requests an adjustment for minor role and a variance pursuant to 18 U.S.C. §3553(a) - or a departure under U.S.S.G. §5K2.0 (c) [Multiple Circumstances].

## III

## AN ADJUSTMENT FOR ROLE IS APPROPRIATE

The issue of role appears to be one of the guidelines' main methods of alleviating the harsh sentencing guidelines for controlled substance offenses. The issue of a determination of the role played in a smuggling operation is so important, that the guidelines provide for multiple adjustments based on this single issue.

U.S.S.G. §3B1.2 provides a range of adjustments for a defendant who plays a part in completing an offense that makes him substantially less culpable than the average person. A minimal participant receives a four level adjustment; a minor participant a two level adjustment, and cases falling in between minimal and minor, a three level adjustment. See, U.S.S.G. §3B1.2.

A minor participant applies to a defendant who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. §3B1.2

Application Note 5. (November 1, 2015).

A defendant's role is evaluated relative to all participants in the criminal scheme. *United States v. Rojas-Millan*, 234 F.3d 464, 472 (9th Cir. 2000).

"In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

'For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

Mr. Martinez' role was limited to that of a loader. He had limited knowledge of the scope or structure of the criminal activity. He was recruited on the same day before his arrest. Defendant had limited knowledge about others within the over-all organization and their activities.

Mr. Martinez had a limited understanding of the overall scope and structure of the smuggling enterprise - his involvement was limited to recovering and offloading packages. He was not involved in planning or organizing the smuggling operation - rather he was told where to go, when to go, and he even lacked knowledge of the type, quantity, or purity of the substance he loaded. He was not involved in planning, organizing, or exercising discretion.

When compared to the other likely participants in the smuggling operation, Defendant's role was minor. The Court should grant the two (2) level adjustment under USSG §2D1.1(a)(5)(i), as well as a two (2) level adjustment under USSG §3B1.2(a).

## IV

## DEPARTURES

### A. APPEAL WAIVED:

The parties have stipulated to a two (2) level appeal and combination of factors. The Court should grant said departure - especially during this uncertain time of COVID-19 pandemic.

### B. MULTIPLE CIRCUMSTANCES:

Mr. Martinez is a 47 year old, with no prior involvement with the federal criminal justice system history. The Defendant had enjoyed a close family relationship and had been earning a living working in construction. At the time of his arrest he was earning the equivalent of $150.00 per week, which was sufficient to support his family.

During the interview Mr. Martinez made it clear that the offer of $8,000.00, for participating in the recovery of the drugs was a big temptation that represented fifty-three times what he received per week, payable in one day. Mr. Martinez' biggest fault was a lapse of judgment over which the care for his family was paramount and did not realize the results of the actions he was taking. Under the totality of circumstances in this case Defendant requests a departure of 4 levels for multiple circumstances and aberrant behavior.

## V

## SENTENCING FACTORS

The factors set forth in 18 U.S.C. § 3553(a) that guide a judge in determining the appropriate sentence since the Supreme Court's landmark decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005) are certainly well known to the Court, as is the

requirement that the Court Impose a sentence sufficient, but not greater than necessary, to comply with" those purposes. Federal judges once again have discretion when it comes to federal sentencing.

Prior to imposing a sentence, the sentencing court should begin by calculating the applicable sentencing guideline range. <u>Gall v. United States,</u> 552 U.S. 38, 39 (2007). Next, the sentencing court must also consider the factors enumerated in 18 U.S.C. 3553(a)(2), and "Make an individualized assessment based on the facts presented.. <u>Gall v. United States</u>, 522 U.S. 38 (2007).

Indeed, in <u>Gall v. United States</u>, 522 U.S. 38, 128 S.Ct. 586, 596 (2007), the Supreme Court specifically stated that a formulaic approach to sentencing is inappropriate:

> On the other side of the equation, the mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction? Does it matter that the withdrawal occurred several years ago? Is it relevant that the withdrawal was motivated by a decision to discontinue the use of drugs and to lead a better life? that percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him? The formula is a classic example of attempting to measure an inventory of apples by counting oranges.

The Supreme Court also made clear that in applying the §3353(a) factors, a sentencing judge "must make an individualized assessment based on the facts presented" by the case, without giving presumptive weight to the Guidelines sentencing range:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines ranges. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however, Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. *Id* at 596-597.

Such an approach, which give individualized consideration to all of the sentencing factors identified by the statute is not only commanded by the <u>Booker</u> holding, but is logical as well, in view of the degree to which the Guidelines are

driven principally by the nature of the offense conduct, and only minimally by the characteristics of the particular offender and his or her life and character. As the Supreme Court noted in <u>Gall</u>, quoting its earlier opinion in <u>Koon v. United States</u>, 518 U.S. 81, 10 (1996), "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." <u>Id</u> at 598.

Because Defendant has accepted responsibility, the only question before this Court is what sentence is "sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)." Under §3553(a), in addition to the Guideline range, the Court should consider the following factors:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed —

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,

    (3)    the kinds of sentences available;

. . .

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

    (7)    the need to provide restitution to any victims of the offense.

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

    **A.    Nature of the Offense.**

The offense was serious in nature as it involved smuggling cocaine into the United States. However, Mr. Martinez appears to have maintained a limited role

when compared to the majority of members of the organization - he was not involved in organizing, planning, or exercise of discretion.

### B. History and Characteristics of the Defendant

As noted above, at 47 years of age, this is Defendant's first involvement with the criminal justice system.

Mr. Martinez has no mental, emotional, or substance abuse issues at this time. He has lived an otherwise law-abiding life. Defendant is remorseful.

Mr, Martinez has the skills and familial support to return to being a self-supporting, meaningful member of society. Defendant is committed to doing so.

**(C) The need for the sentence imposed —**

**(I) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The offense is a class A felony. This is Mr. Martinez' first involvement with the federal criminal justice system. This conviction has operated as a wake-up call to the realities of the harm that will befall his family, should he further stray from a law-abiding life, as well as the harm to society for the abuse of controlled substances.

Mr. Martinez has the family support, and ability to return to living an otherwise law abiding life.

**(II) To afford adequate deterrence to criminal conduct.**

Defendant has been arrested, indicted, incarcerated, and exposed to COVID-19 while unable to socially distance himself because of his involvement in the criminal activity in this case. Defendant has led an otherwise law-abiding life, and has learned his lesson. Further deterrence is not required. It appears a variant sentence would serve as adequate deterrence.

**(III) To protect the public from further crimes of the defendant.**

This is Mr Martinez' first violation of the law. Defendant's involvement

was minor.

Mr. Martinez has the support and career tools necessary to fulfill his goals to rebuild a life for himself, while living a law abiding life and make meaningful contribution to society. The likelihood of further criminal activity is highly unlikely.

**(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment**

Mr, Martinez has a home, support to return to his life. He has no identifiable need for education or further vocational training, he has chosen the construction field.

## I. The Kinds of Sentences Available.

A variety of sentencing options are available to the Court, a term of custody, or a sentencing variance pursuant to 18 U.S.C. §3561(C)(1). The question is what sentence is sufficient but not greater than necessary to fulfill the purposes of sentencing in accordance with 18 U.S.C. § 3553(a).

## II. The Need to Avoid Unwarranted Sentencing Disparity.

During the COVID-19 pandemic, many Defendants with a minor role have been placed on probation - with house arrest and community service - to protect them and others from potential exposure.

Protection from COVID-19 is a consideration, and has been taken into account in other, similar cases before the Court. With variant versions of COVID-19 presenting additional dangers, including questions about effectiveness of antibodies or vaccines, the protection of persons in custody should be a paramount concern in cases such as this - deviations from an otherwise law abiding life.

The history and characteristics of this Defendant, lifelong history of work, familial support demonstrate the ability and willingness to follow all conditions of supervised release or probation, while making meaningful contributions to society, justify a sentence lower than others who may have been substantially more involved in the overall organization and activity.

**2.     The need to provide restitution to any victims of the offense.**

The are no identified victims which require restitution.

## III
## SENTENCE RECOMMENDATION

The Court should grant the two (2) level adjustment under USSG §2D1.1(a)(5)(i), as well as a two (2) level adjustment under USSG §3B1.2 (a). For Role.

Mr. Martinez has fully qualified for Safety Valve and a two (2) level adjustment is appropriate under USSG §2D1.1(b)(17).

The Court should grant a four (4) level variance based on a combination of circumstances which take this case outside of the heartland.

After factoring in the three (3) level adjustment for acceptance of responsibility; and four (4) level departure for Fast Track included in the plea agreement, the resulting offense level of 19, with a criminal history category of I based on 0 criminal history points results in a guideline sentence of 30 to 37 months. A variance to a sentence of 30 months will be sufficient to serve both a deterrent effect and satisfy the sentencing factors of 18 U.S.C. §3553(a).

Respectfully Submitted,

Dated: March 3, 2022

  s/Frank T. Morell  
email:ftmorell-esq@sbcglobal.net