MARC X. CARLOS, ESQ.
California SBN: 132987
**MARC CARLOS LAW, APC**
424 F Street, Suite 205
San Diego, CA 92101
Telephone: (619) 702-3226
marc@marccarloslaw.com

Attorney for Defendant
**JESUS ADOLFO ARGUETA VARGAS**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE CATHY ANN BENCIVENGO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> JESUS ADOLFO ARGUETA VARGAS, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 20CR763-CAB <br><br> **Defendant's Sentencing Memorandum** <br><br> Date: March 30, 2022 <br> Time: 9:30 a.m. |

TO: **RANDY S. GROSSMAN, ACTING UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF CALIFORNIA; NICOLE BREDARIOL, ASSISTANT UNITED STATES ATTORNEY; EMILY WALLEN, UNITED STATES PROBATION OFFICER:**

Defendant Jesus Adolfo Argueta Vargas (hereinafter referred to as "Mr. Argueta"), by and through his counsel, Marc X. Carlos, hereby files the following Defendant's Sentencing Memorandum.

1

# I.
# INTRODUCTION

On February 7, 2020, a Maritime Patrol Aircraft conducting routine patrol detected several small vessels which appeared to have rendezvoused in a known drug trafficking area approximately 150 nautical miles south of the Costa Rica/Panama border, in international waters. The aircraft then observed two targets get underway, traveling north at a high rate of speed. These vessels were Go Fast Vessels ("GFV's) which are small, elongated boats designed to reach high speeds. The United States Coast Guard ("USCG") Cutter Tahoma was patrolling nearby and was diverted to intercept the two targets. The USCG Tahoma launched its over-the-horizon boat and dispatched a helicopter to pursue the target vessels. Bale-shaped objects were jettisoned from one of the GFV's. The USCG helicopter activated its blue law enforcement light and instructed the vessel to halt. When GFV failed to yield, warning shots were expended from the helicopter in the direction of the GFV, but the GFV continued on. Disabling fire was expended striking the port side of the GFV. The USCG helicopter eventually pulled ahead of the vessel and fired a second set of warning shots and disabling fire, rendering the vessel inoperable. Barrantes stated the vessel was of Costa Rican nationality. Pursuant to USCG's standard practice, Barrantes was considered the master of the vessel because he was the first to make a claim of nationality. All five defendants, including Mr. Jesus Adolfo Argueta Vargas (hereinafter referred to as Mr. Argueta") were taken

Defendant's Sentencing Memorandum        20CR763-CAB

into custody without incident. The USCG recovered 17 jettisoned bales in the location marked by the helicopter. The DEA determined the total weight of cocaine was 502 kilograms.

On February 26, 2020, a two-count indictment was filed in the Southern District of California, charging Mr. Argueta in Count One with violation of 46 U.S.C. §§ 70503 and 70506(b), conspiracy to distribute cocaine on board a vessel, a Class A felony, and in Count Two with violation of 46 U.S.C. § 70503 and 18 U.S.C. § 2, possession of cocaine with intent to distribute on board a vessel and aiding and abetting, a Class A felony. On October 20, 2021, Mr. Argueta pled guilty to Count Two of the indictment. Mr. Argueta's sentencing hearing is currently set for March 30, 2022, at 9:30 a.m., at which time he will respectfully request this Court vary from the guideline range and sentence him to thirty months custody.

## II.
## STATEMENT OF FACTS

Mr. Argueta adopts the factual basis recited in the plea agreement that he entered into on October 20, 2021. Additionally, Mr. Argueta adopts the facts he reported to United States Probation Officer Emily Wallen (hereinafter referred to as "USPO Wallen") on December 2, 2021, and those recounted in the Presentence Investigation Report (hereinafter referred to as the "PSR").

///

Defendant's Sentencing Memorandum	20CR763-CAB

# III.
# INDIVIDUAL BEFORE THE COURT

Mr. Argueta is a 34-year-old Costa Rican citizen. Mr. Argueta was born on December 6, 1987, in Limon, Costa Rica, to Adolfo Argueta (age 63) and Janet Vargas Urias (age 52). When Mr. Argueta was six years old, his parents divorced, and his mother abandoned him and his five siblings. From that point on, he was raised by his father as a single-parent.

Due to financial constraints, Mr. Argueta never had the opportunity to attend school at any level. Instead of going to school, Mr. Argueta worked in order to contribute to household expenses. Mr. Argueta has a long history of working in the fishing and construction industries in Costa Rica.

For the past fifteen years, Mr. Argueta has been in a relationship with Jessica Chavez Rojas (age 40). They have one daughter they adopted as an infant, Iorveli Yuana Argueta Vargas (age 11). Iorveli resides with her mother in Costa Rica. Jessica has three children from a prior relationship who reside in Costa Rica: Ervin (age 23), Ryan (age 22), and Karla (age 20).

Mr. Argueta's family remains extremely supportive of him and they count the days to be reunited with him. Upon release, Mr. Argueta will return to Costa Rica and obtain employment in order to provide for his family.

///

# IV.
# INVOLVEMENT IN THE INSTANT OFFENSE

Mr. Argueta is remorseful for his conduct in this case and he accepts full responsibility for his behavior. His actions here were completely out of suit with the rest of his life. Mr. Argueta found himself in dire financial straits. Unemployment and inflation in his home country made it very difficult for him to support his family. In the future, he plans to reside in Costa Rica and find employment in order to provide for his family.

# V.
# THE GUIDELINES

Mr. Argueta maintains the following Guidelines are applicable and appropriately applied in this case:

| | |
|---|---|
| Base Offense Level [USSG §2D1.1] | 36 |
| Base Offense Level Role-Cap [USSG § 2D1.1(a)(5)] | 33 |
| Reckless Endangerment During Flight [USSG § 3C1.2] | +2 |
| Safety Valve [USSG §§ 2D1.1(b)(18) and 5C1.2] | -2 |
| Minor Role [USSG § 3B1.2] | -2 |
| Acceptance of Responsibility [USSG §3E1.1(a) & (b)] | -3 |
| Appeal waiver/Combination of Factors [USSG § 5K2.0] | -2 |
| **Resulting Offense Level** | **26** |

///

Mr. Argueta has a total criminal history score of zero (0), and thus falls within Criminal History Category I. (PSR ¶ 46). The resulting offense level is twenty-six (26). The resulting guideline range is sixty-three (63) to seventy-eight (78) months.

**A. Safety Valve.**

A defendant meets the requirements for Safety Valve if: (1) he does not have more than one criminal history point, (2) he did not use violence, a threat of violence, or a dangerous weapon during the commission of the offense, (3) the offense did not result in death or serious bodily injury to anyone, (4) he did not play a leading or organizing role in the commission of the offense, and he was not engaged in a continuing criminal enterprise, and (5) before sentencing, he truthfully provided to the Government all information and evidence he has concerning the offense. (USSG § 5C1.2).

Mr. Argueta does not have more than one criminal history point. He did not use violence, threat of violence, or a dangerous weapon. The offense did not result in death or serious bodily injury. He did not play a leading or organizing role in the commission of the offense. In addition, he truthfully disclosed to the Government his involvement in the offense. As such, Mr. Argueta is entitled to a two-level reduction for safety valve.

///

///

///

6

**B. Minor Role.**

The USSG § 3B1.2 provides that in deciding whether a defendant's conduct in the offense should be viewed as minimal, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise should be considered. A two-level reduction for minor role should be implemented where a defendant is less culpable than most other participants, but whose role could not be described as minimal.

There is no evidence that Mr. Argueta had knowledge of the scope and structure of the criminal activity. While there may be some indication that Mr. Argueta piloted the vessel, there is no evidence that he occupied any elevated role as a "captain" in the organization. All crew members were equally capable of piloting the vessel. In addition, Mr. Argueta did not participate in the planning or organization, and he did not exercise any decision-making authority or influence. Finally, there is no evidence available to show Mr. Argueta had any financial interest in the narcotics seized that evening or in any ongoing distribution network.

## VI.
## THE COURT MUST CONSIDER THE DIRECTIVES SET FORTH IN 18 U.S.C. § 3553(a)

Mr. Argueta, under his plea agreement, may seek variances or sentencing reductions under 18 U.S.C. §3553(a), and the Court should consider all of the factors set forth in that section when making a sentencing determination. *Booker*, 543 U.S. 220. The factors set forth in §3553(a) fall into three general categories: (1) the nature of the

offense; (2) the history and character of the defendant; and (3) the needs of the public and the victims of the offense.

In the instant case, each category considering the specific statutory factors under §3553(a) weigh in favor of granting Mr. Argueta a fair and reasonable sentence.

**A. The Nature of the Offense.**

First, the Court should consider the nature of the offense. The offense was committed in a non-violent manner. Mr. Argueta now understands the gravity of his actions. Since his arrest, Mr. Argueta has been compliant and cooperative during the criminal proceedings.

**B. History and Character of the Defendant.**

Second, the Court should consider the history and character of the defendant.

**1. Mr. Argueta's Criminal History**

Mr. Argueta has zero (0) criminal history points and is in Criminal History Category I. (PSR ¶ 32). Mr. Argueta has no criminal history to speak of. This Court should consider that this appears to be a single criminal occurrence that stands in stark contrast to his otherwise law-abiding life. In addition, there is no evidence this criminal activity occurred over any lengthy period of time. Mr. Argueta's conduct in the instant offense constitutes aberrant behavior as it is completely out of suit with the rest of his life.

///

## 2. Mr. Argueta's Background and Character

**a. Family Support.**

Mr. Argueta was born on December 6, 1987, in Limon, Costa Rica, to Adolfo Argueta (age 63) and Janet Vargas Urias (age 52). When Mr. Argueta was six years old, his parents divorced and his mother abandoned him and his five siblings. From that point on, he was raised solely by his father. Mr. Argueta lacked the love and support of his mother growing up because his mother never visited him after the divorce.

For the past fifteen years, Mr. Argueta has been in a relationship with Jessica Chavez Rojas (age 40). They have one daughter they adopted as an infant, Iorveli Yuana Argueta Vargas (age 11). Iorveli resides with her mother in Costa Rica. Jessica has three children from a prior relationship who reside in Costa Rica: Ervin (age 23), Ryan (age 22), and Karla (age 20).

Mr. Argueta's family is eager to be reunited with him as life has been very difficult during his absence. They remain extremely supportive of him, and it is this support that will ensure he remains on the right path moving forward.

**b. Mr. Argueta's incarceration would have an extraordinary effect on innocent family members.**

In *United States v. Aguirre*, the 9th Circuit found it was within the district court's discretion to depart downward 4 levels for extraordinary family circumstances "based on the fact that there is an 8-year-old son who's lost a father and would be losing a mother

for a substantial period of time." (*U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000)). Similarly, in *United States v. Johnson*, where the defendant was a single mother responsible for three young children and the young child of her institutionalized daughter, the court departed not because the defendant had lesser culpability but because the court was "reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing. (*U.S. v. Johnson*, 964 F.2d 124, 128-130 (2d Cir. 1992)). In the instant case, section 3553(a) allows the court to consider family circumstances in imposing sentence.

Mr. Argueta is the pillar of his family in addition to being the sole financial provider. Mr. Argueta paid all the household expenses. Mr. Argueta's family depends on him emotionally and financially and would suffer greatly if he receives a lengthy custodial sentence.

**c. Lack of education.**

Mr. Argueta has never had any formal education. Due to financial constraints, Mr. Argueta worked instead of going to school so he could make money in order to contribute to household expenses. Mr. Argueta is illiterate and without basic mathematical skills. In the future, Mr. Argueta would like to go back to school.

**d. Employment.**

Mr. Argueta has worked as a fisherman in Costa Rica. When fishing was slow, he worked in the construction industry. Upon release, he plans to continue working in the

fishing and construction industries.

**e. COVID-19.**

The COVID-19 pandemic has spread like wildfire across the globe. Despite efforts made by the Bureau of Prisons to prevent the virus from spreading within its walls, the mass outbreaks have been extraordinarily difficult to contain. Incarceration facilities have encountered major difficulties implementing CDC protocols for disease prevention. As a result, there have been massive outbreaks, particularly within the Bureau of Prisons. As acknowledged by Attorney General Barr, the best way to prevent infection is to reduce prison populations.[1] In light of this deadly and unpredictable virus, Mr. Argueta respectfully requests a lower sentence than he would otherwise receive absent a pandemic.

**C. Needs of the Public and the Victim**

Finally, the Court should consider the needs of the public and the victim, where applicable. Here, there are no identifiable victims. During the commission of the instant offense, Mr. Argueta did not physically harm anyone, and he is sincerely remorseful and ashamed of his actions. Society at large does not need protection from Mr. Argueta. Accordingly, all three categories weigh in favor of a fair and reasonable sentence for Mr. Argueta.

---

[1] *See* Attorney General William Barr's April 3 Memorandum at
https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf

Defendant's Sentencing Memorandum                                                                                       20CR763-CAB

# VII.
# CONCLUSION

Mr. Argueta respectfully requests the Court vary from the guideline range and sentence him to thirty months in custody. By the time of sentencing, Mr. Argueta will have served 776 days in custody. Mr. Argueta's background and characteristics support the notion that he is unlikely to reoffend in the future. Moreover, Mr. Argueta's physical distance from the United States would make it difficult, if not impossible, for him to reenter this country to commit a crime. He has no criminal history aside from the instant offense and the immense support he has from his family will further ensure he remains law-abiding in the future. Moreover, USPO Wallen's recommendation supports the notion that Mr. Argueta is deserving of a significant variance from the guideline range. Where USPO Wallen's guideline range calculation was 168 to 262 months with safety valve, she believed a sentence of 84 months, a difference of 84 months and half of the low end of the guideline range, was sufficient but no greater than necessary. (PSR ¶ 14). In light of Mr. Argueta's sincere remorse, the effect his incarceration has had on innocent family members, his lack of education, and the COVID-19 pandemic, the requested sentence would be a fair and just sentence.

Respectfully submitted,

Dated: March 23, 2022

/S/MARC X. CARLOS
MARC X. CARLOS
Attorney for Defendant
Jesus Adolfo ARGUETA VARGAS

Defendant's Sentencing Memorandum 20CR763-CAB