BRIAN J. WHITE, A.P.C. (Bar No. 155198)
Attorney at Law
4320 Iowa St.
San Diego, CA 92104
Telephone: (619) 280-8022
Facsimile: (619) 280-8023
brian@bjwlaw.com

Attorney for Defendant,
JUAN BARRANTES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. CATHY ANN BENCIVENGO)

| UNITED STATES OF AMERICA, | Case No. 20CR0763-CAB |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| JUAN BARRANTES, | Date: 3/30/22 |
| Defendant. | Time: 9:30 a.m. |

TO: RANDY GROSSMAN, ACTING UNITED STATES ATTORNEY, NICOLE BREDARIOL, ASSISTANT UNITED STATES ATTORNEY, AND NATALIE NELSON, PROBATION OFFICER:

JUAN BARRANTES submits the following in support of his request for a custodial sentence of **37 months.**

## PERSONAL BACKGROUND

Juan Barrantes was born and raised in the small town of Puntarenas, a port town on Costa Rica's Gulf of Nicoya, and a tourist destination, with many being attracted to its pristine beaches and strong surf, aquarium and rescue center with seahorses, turtles and crocodiles, shops and cafes. But that is not the Puntarenas Barrantes experiences.

---

Defendants's Sentencing Memorandum     Page 1 of 7

Barrantes is poor. He quit school at the age of seven in favor of working, initially in a warehouse. At the age of 11 he followed his father's footsteps and began working as a fisherman, work he has done ever since. Now 38 years old, he lives with his wife in a small apartment in his mother's house. His only asset is a 27 year old Toyota. Barrantes earns about a quarter of the average income in Puntarenas, $4,500 USD[1] a year versus the average income of $16,622 USD.[2] He has two adolescent children from a prior marriage, who live in a neighboring town.

Barrantes is well known as a fisherman in his small community. About a week before his arrest, Barrantes was contacted by someone identified as "Popo," who asked him if he wanted a job. The job entailed Barrantes picking up some "frames" out at sea. When told the job paid $13,000, Barrantes knew he would be picking up kilograms of cocaine. (Puntamares is located along a well known sea route used to transport cocaine from Columbia to points in South America.) Barrantes had no personal contact with any of the smugglers; all contact was through text messages.

Popo texted coordinates where Barrantes was pick up the kilos, about 90 miles out to sea. When Barrantes explained that he didn't own a boat, Popo told him they would provide one for him, and told him where he would find the boat. Barrantes was also given coordinates of the load drop location upon returning to Costa Rica with the kilos of cocaine.

Barrantes contacted his brother-in-law, Hector Pereira Jimenez, asking if he

---

[1] He earns about 250,000 Colons (the Costa Rican currency) a month, which is the equivalent of $380 USD. https://www.oanda.com/currency-converter/en/?from=CRC&to=USD&amount=250000

[2] According to Salary Expert, the average annual income in Puntarenas, Costa Rica is 10,850,263 Colon, or $16,522 USD. https://www.salaryexpert.com/salary/area/costa-rica/puntarenas

wanted to accompany him on the venture, explaining he was being paid $13,000 and would give Jimenez $5,000. Jimenez agreed.

The following day, Barrantes and Jimnez arrived at the location of the smuggling boat, to find it equipped with a cell phone, a satellite phone, gasoline, and an emergency beacon. The pair set sail that evening.

When arriving at the coordinates given to him, Barrantes was unable to locate the bales of cocain, which apparently had drifted. (They had been anchored to a buoy, which had a tracking sensor.) Barrantes used the satellite phone to contact the mainland smugglers, who updated Barrantes with the coordinates of the floating bales of cocaine. Barrantes soon reached the bales, where he and Jimenez hoisted the bales into their boat.

While en route back to Costa Rica, Barrantes ran into somewhat rocky seas. The combination of the weight distribution in the panga boat and the rocky seas caused the boat to split in two. Barrantes radioed the mainland smugglers that they were sinking and needed help. He was assured help was on the way. The bundles of cocain had been tied together and formed somewhat of a floating platform. They climbed on top of the platform–with just a few bottles of water between them–and waited for help.

They expected to be rescued the following morning. Help, however, didn't arrive for nearly five days. Exposed to hours of direct daytime sun, and with no food, Barrantes became parched and was badly sunburned by the time he was rescued. (They left on a Monday and weren't rescued until the following Friday.)

Two rescue boats eventually arrived, one smaller than the other, both boats containing two occupants. One on the smaller boat boarded the larger boat. Barrantes and Jimenez were pulled onto the boat, and the bales of cocaine were hauled onto the rescue boat. The drug-laden rescue boat headed back toward Costa Rica.

About 30 minutes later, a U.S. Coast Guard helicopter was heard overhead.

All on the boat were afraid and the boat's pilot failed to heed. After warning shots were fired to no avail, the Coast Guard shot out the boat's engines. A Coast Guard boat seized the occupants of the boat, the cocaine, and then scuttled the boat.

Barrantes has been in continuous custody for 776 days.

## IMPACT OF THE PLEA AGREEMENT

In their plea agreement, the parties agreed to the following advisory Guideline calculations:

| | |
|---|---|
| Base Offense Level, USSG §2D1.1(c)(1) | 36 |
| Reckless Endangerment During Flight, USSG §3C1.2 | +2 |
| Safety Valve, USSG §§2D1.1(b)(17) and 5C1.2 | -2 |
| Acceptance of Responsibility, USSG §3E1.1 | -3 |
| Appeal Waiver/Combination of Circumstances | -2 |
| **Adjusted Offense Level** | **31** |

## REQUEST FOR DEPARTURES

**1. Minor Role**

Barrantes was essentially nothing more than a courier, albeit at the high seas using a panga boat as opposed to an automobile, which is common in this district. His role was limited to retrieving bales of cocaine floating at sea and returning them to Costa Rica. As a 30+ year fisherman, piloting a boat for Barrantes comes as easily as driving a car.

When considering the non-exhaustive factors for granting a role reduction, the court can find Barrantes played a minor role. He had no understanding of the scope and structure of the criminal activity. In fact, he never met any of those who organized the smuggling event. He did not participate in planning or organizing the crime. He had no decision-making authority. And he had no ownership interest in the drugs.

The application notes to USSG §3B1.2 specifically describes a low-level drug courier as an example of a defendant who should be considered for a mitigating role reduction:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline. USSG §3B1.2, appl. note 3(A).

Whether to decrease the offense level by 4-levels for minimal role, 2-levels for minor role, or 3-levels for a role falling between the two, is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." USSG §3B1.2, appl. note 3(C).

Under the unique facts of this case, Barrantes requests the court to grant him a 2-level downward departure for playing a minor role. Applying a 2-level role reduction would result in an adjusted offense level of **26**.

Barrantes falls in a **Criminal History Category I**, with the resulting guideline range of **63-78 months**.

## 18 U.S.C. §3553(a) FACTORS

Under 18 U.S.C. §3553(a), Barrantes requests the court to consider (1) the nature of the offense; (2) his history and characteristics, and the needs of the public and the victims of the offense.

The nature of his offense is admittedly unusual for this district, but it bears similarities to many of the border bust cases seen in this district. In the typical case, a courier is recruited to drive drugs across the border and await delivery instructions. Being a boat case, this case has a different twist, but the essence of the crime is similar. Barrantes was recruited to retrieve cocaine at sea and deliver it where instructed. Barrantes committed a drug trafficking crime–transporting a load from Point A to Point B, not significantly different that the typical courier

case.

Barrantes has no criminal convictions, was born into and lives at below-poverty levels. He had no education, having dropped out of school at the age of seven. He has been a lifelong fisherman, earning extremely low wages selling his catch to locals and restaurants. He earned about a quarter of the average salary in his hometown. The money he was promised represented over two years' worth of income.

Barrantes poses little risk of re-offending. It's nothing less than a miracle that Barrantes is alive today, having survived five days and nights at sea within nothing more than a small amount of water to sustain him. Blistered by the sun and physically and mentally exhausted, Barrantes is grateful to be alive. The combination of that harrowing experience and a long period of incarceration–during the height of COVID-18, no less–work as a significant deterrence to Barrantes future criminality.

Finally, this crime involves no identifiable victims. During the commission of the crime, Barrantes did nothing to harm innocent others, and the nature of the crime is non-violent.

## SENTENCE REQUESTED

Considering Barrantes personal history and characteristics, he requests a custodial sentence of **37 months.** Such a sentence will be sufficient, but not greater than necessary, to achieve general and specific deterrence, and will achieve the sentencing objectives of 18 USC §3553.

///

///

///

///

Respectfully submitted,

Dated: March 23, 2022         /s/ Brian J. White
                              BRIAN J. WHITE, Attorney for
                              JUAN BARRANTES